In re ARROW AIR, INC., Debtor.

The OFFICIAL UNSECURED CREDITORS' COMMITTEE, for and on Behalf of ARROW AIR, INC., Debtor, Plaintiff,

v.

AIRPORT AVIATION SERVICES CORP., a Puerto Rican Corporation, Defendant.

Bankruptcy No. 86–00340–BKC–AJC.

Adv. No. 88–0504–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

July 7, 1989.

**42**

Jorge Bermudez–Torregrosa, c/o Cuevas Kuinlam & Bermudez, Hato Rey, P.R., for defendant.

Myrna D. Bricker, c/o Tew, Jordan & Schulte, Miami, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

This cause came on before the Court on May 4, 1989, upon the complaint of The Unsecured Creditors' Committee, for and on behalf of Arrow Air, Inc., for avoidance of alleged preferential transfers, pursuant to 11 U.S.C. 547(b), and the Court having heard the testimony, examined the evidence, observed the candor and demeanor of the witnesses, considered the argument of counsel, and being otherwise fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

## A. FINDINGS OF FACT

Upon stipulation of the parties, the facts included under Numbers 1 through 13 which follow are accepted as such:

1) This is an adversary proceeding to recover voidable transfers pursuant to 11 U.S.C. 547(b).

2) Jurisdiction is vested in this Court by virtue of 28 U.S.C. 157(b)(1) and (b)(2)(f).

3) Arrow Air, Inc. (from hereinafter, "ARROW") is the debtor and debtor-in-possession herein, having filed its voluntary petition under Chapter 11 of the Bankruptcy Code on February 11, 1986.

4) The Official Unsecured Creditors' Committee duly appointed in this case un-der Sec. 1102 of the Bankruptcy Code is authorized to bring this action for and on behalf of ARROW pursuant to ARROW's confirmed plan of reorganization under Article 8(d).

5) Airport Aviation Services Corporation (from hereinafter, "AAS") is a corporation organized under the laws of the Commonwealth of Puerto Rico and doing business in San Juan, Puerto Rico.

6) AAS provided various ground handling services to ARROW at International Airport, San Juan, Puerto Rico. AAS is a creditor of ARROW.

7) ARROW made the following payments by check to AAS within ninety (90) days before ARROW filed its voluntary petition in bankruptcy.

The checks are as follows by the date of the check and the amount:

| | |
|---|---|
| November 15, 1985 | $17,607.65 |
| December 4, 1985 | 38,294.69 |
| December 22, 1985 | 16,961.08 |
| December 30, 1985 | 15,149.05 |
| January 17, 1986 | 19,878.30 |
| January 20, 1986 | 17,740.96 |
| January 21, 1986 | 16,986.80 |
| January 22, 1986 | 11,850.00 |
| February 3, 1986 | 37,916.00 |

No more than 19 days elapsed between any of these payments.

8) The checks to AAS from ARROW were sent in payment of invoices which were prepared and sent by AAS to ARROW for the various ground handling services rendered to ARROW at International Airport, San Juan, Puerto Rico.

9) AAS regularly billed ARROW for services rendered. The rates charged were those set forth in Schedule B of the Ground Handling Agreement dated July 22, 1985.

10) All invoices sent by AAS to ARROW provided as follows: "Terms, 30 days net." The Ground Handling Agreement expressly provided that ARROW was required to pay each bill not later than thirty (30) days from the date thereof. That provision is included in the Ground Handling Agreement, Article 5, Pages 4 and 5.

11) The Ground Handling Agreement further provided that in the event ARROW failed to pay an invoice within thirty (30)

days, AAS was entitled to charge an additional one-and-a-half percent (1½%) on the unpaid balance per month. That is found in the Ground Handling Agreement, Article 5, Page 5, Exhibit 6.

12) AAS filed a claim against ARROW's estate for services rendered and unpaid in the amount of $193,033.67. The Committee has objected to AAS' claim. Said objection to claim is still pending.

13) All of the payments described in Paragraph 6 herein constitute transfers of the debtor's funds which were made to or for the benefit of AAS, a creditor, and the transfers were made on or within ninety (90) days before the date of the filing of the petition in bankruptcy by ARROW.

14) The commercial relationship between ARROW and AAS, under which the latter provided ground handling services to the former, commenced in February 1983, and lasted until April 15, 1986.

15) Under said relationship, AAS would bill ARROW every Monday for the services provided during the prior week. Once a month, a statement of account would be submitted to ARROW by AAS.

16) AAS' bills were to be paid by AR-ROW within thirty (30) days of the date thereof, but, throughout the relationship, ARROW normally would pay after said term had run and, in many instances, the bills were not paid in full. AAS always credited ARROW's payments to those invoices shown on the voucher part of AR-ROW's checks.

17) ARROW's manner of paying AAS' bill was in keeping with the common industry practice, which evidenced seasonal variations in payments to AAS.

18) AAS' collection efforts as regards the ARROW account consisted basically of telephone calls from Mr. Willie Santana, the AAS' President, to Mr. Pat Di Pietro, ARROW's Comptroller.

19) However, in February 1985, matters came to a head due to ARROW's owing AAS $196,369.56. Mr. Santana met, at the time, with ARROW and worked out a payment plan, pursuant to which ARROW was to pay off this debt through four (4) payments, evidenced by four (4) post-dated checks which, subsequently, were not honored by ARROW's bank.

20) Although ARROW and AAS continued doing business as normal, with AR-ROW paying AAS' bills as set forth under Number 16, above, as of July 1985, the above referred $196,369.56 debt was still outstanding. Thus, AAS discontinued all services to ARROW effective July 9, 1985. Services were resumed ten (10) days, thereafter, and ARROW paid the debt referred to herein in full by August 21, 1985. Surely ARROW remembered this. If payments stopped, further service would stop.

21) Effective July 22, 1985, ARROW and AAS entered into a new Ground Handling Agreement, pursuant to which ARROW was still to pay AAS' bills within thirty (30) days of the date thereof.

22) From the latter date until early October 1985, ARROW paid AAS' bills, albeit not in full, within thirty (30) days of the date thereof. Nonetheless, from mid-October 1985 until the last payment made by ARROW to AAS, on February 3, 1986, ARROW reverted to its customary conduct of paying AAS' bill more than thirty (30) days after their date and seldom in full.

23) The payments which plaintiff seeks to avoid were made between November 15, 1985 and February 3, 1986 and the same were credited, as per ARROW's instructions, to the invoices shown on the voucher part of ARROW's checks, as was the practice between the parties.

24) In most instances, AAS extended credit to ARROW only after the latter had paid for prior credit.

## B. CONCLUSIONS OF LAW

1) "A transfer that would otherwise be considered preferential is insulated from attack by the trustee under Sec. 547(c)(1), if: (i) the preference defendant extended new value to the debtor; (ii) both the defendant and the debtor intended the new value and reciprocal transfer by the debtor to be contemporaneous; (iii) the exchange was in fact contemporaneous." 4 *Collier on*

**44**

*Bankruptcy,* Sec. 574.09, at p. 547–41 (15th Edition).

2) Under Sec. 547(a)(2) of the Bankruptcy Code, "new value" includes in its definition "money's worth in.... new credit...."

3) "Payment of a debt by means of a check is equivalent to a cash payment." 124 Cong.Rec. H11,097 daily ed. Sept. 28, 1978 (remarks of Representative Edwards); 124 Cong.Rec. S17,414 daily ed. Oct. 6, 1978 (remarks of Senator DiConcini).

4) As set forth in the legislative history of the amendments to the Code, "no doubt a purchase by the debtor of.... services with a check.... would be insulated by this exception...." *Id.*

5) "Payment of a check is equivalent to a cash payment unless the check is dishonored...." *Goger v. Cudahy Foods Co. (In Re Standard Food Services, Inc.),* 723 F.2d 820, 821 (11th Cir.1984).

6) In view of the above findings of fact and of the applicable law, we conclude that, by extending credit to ARROW only after the latter had paid for prior credit, AAS was in fact extending new value to its client and that the parties so understood this to be the case and intended the new value (i.e., new credit) and the transfer to be contemporaneous; and that the exchanges were substantially contemporaneous.

### FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is

ORDERED that judgment be entered for defendant and against plaintiff with costs to be taxed by the Clerk.

DONE and ORDERED.